**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

PGB RESTAURANT, INC., and all others
similarly situated,

   Plaintiffs,

     v.

ERIE INSURANCE COMPANY,

   Defendant.

Court No. 20-cv-2403

*JURY TRIAL DEMANDED*

## COMPLAINT AT LAW

Plaintiff, PGB RESTAURANT, INC., doing business as "Mother's Day Restaurant," ("Plaintiff") on behalf of itself and all others similarly situated, by and through their undersigned attorneys complaining of the Defendant, ERIE INSURANCE COMPANY (hereinafter "Erie" or "Erie Insurance"), for its Complaint at Law, pleading in the alternative, on behalf of themselves and all others similarly situated, state:

### Nature of the Action

1. This action arises out of Erie's failure to provide insurance coverage for the business income Plaintiff lost because of the ongoing Coronavirus (COVID-19) pandemic.

2. Plaintiff brings this action for breach of contract and declaratory relief on behalf of themselves and all other similarly situated Illinois businesses that offer food or beverages for on-premises consumption.

### The Parties

3. Plaintiff, PGB Restaurant, Inc., is an Illinois corporation with its principal place of business at 8815 W Cermak Rd. in Norther Riverside, Illinois.

4.     Defendant, Erie Insurance, is a publicly held insurance corporation organized under the laws of the State of Pennsylvania, with its principal place of business in Erie, Pennsylvania.

5.     At all times mentioned herein, Defendant, Erie Insurance, was licensed to do business in the State of Illinois, selling property and casualty insurance policies to bars, restaurants, caterers, banquet halls, and other hospitality businesses.

## Jurisdiction and Venue

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant; there are more than 100 members of the Class; and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

7.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) because there is complete diversity among the parties, and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

8.     This Court has personal jurisdiction over Erie Insurance pursuant to Illinois's long-arm statute, 735 ILCS 5/2-209, because this complaint concerns: (1) one or more contracts Erie made to insure property and/or risk in Illinois, (2) business that Erie transacted within Illinois, and (3) one or more contracts and/or promises Erie made that are substantially connected with Illinois. 735 ILCS 5/2-209(a)(1), (4), (7).

9.     Additionally, because this action presents an actual controversy within this Court's jurisdiction, this Court may declare the legal rights and obligations of the parties hereto under 28 U.S.C. § 2201.

10.     Venue is appropriate because "a substantial part of the events or omissions giving rise to the claim[s] occurred" in the Northern District of Illinois and Erie "resides" in the Northern District of Illinois. 28 U.S.C. § 1391.

## Factual Allegations

### *Coronavirus (COVID-19) and Illinois's Response*

11.     For years, if not decades, the Center for Disease Control and the World Health Organization have been warning about the possibility of an airborne virus that could cause a worldwide pandemic.

12.     Coronavirus (COVID-19) (hereinafter "COVID-19") is a highly contagious airborne virus that has rapidly spread and continues to spread across the United States.

13.     COVID-19 is spread by a number of methods, including "community spread" disease meaning that some people have been infected and it is not known how or where they became exposed.  Public health authorities, including the CDC, have reported significant ongoing community spread of the virus including instances of community spread in all 50 states.

14.     The CDC has reported that a person can be become infected with COVID-19 by touching a surface or object (like a fork, plate, table, or chair, to name a few) that has the virus on it, and then touching their own mouth, nose or eyes.

15.     More specifically, COVID-19 infections are spread through droplets of different sizes which can be deposited on surfaces or objects, according to the World Health Organization.

16.     To reduce the spread of the disease, the CDC has recommended that business clean and disinfect all surfaces, prioritizing the most frequently touched surfaces.

17.     COVID-19 has been declared a pandemic by the World Health Organization.

18. The COVID-19 pandemic is a public health crisis that has profoundly impacted American society, including the public's ability to patronize bars and restaurants.

19. In response to this pandemic, Federal and State authorities have mandated social distancing and limited the number of people that can gather in any setting.

20. On March 16, 2020, in direct response to the COVID-19 outbreak, and pursuant to the Illinois Emergency Management Agency Act, 20 ILCS 3305/1, *et seq.*, Illinois Governor J.B. Pritzker issued Executive Order 2020-07, ordering "all businesses in the State of Illinois that offer food or beverages for on-premises consumption—including restaurants, bars, grocery stores, and food halls—[to] suspend service for and … not permit on-premises consumption." Executive Order 2020-07 (2020). Although Executive Order 2020-07 permitted such businesses to serve food and beverages for off-premises consumption, it mandated that they ensure they have an environment where patrons purchasing food or beverages "maintain adequate social distancing." *Id.*

21. On March 20, 2020, Governor Pritzker issued Executive Order 2020-10, (1) directing Illinois residents to stay in their homes except when performing "essential" activities, (2) prohibiting gatherings of 10 or more people, and (3) requiring "non-essential" businesses to cease operations. Executive Order 2020-10 (2020).

22. Executive Orders 2020-07 and 2020-10 are not laws or ordinances.

23. Since March 16, 2020, countless Illinois bar and restaurant operators have made claims under their property and casualty insurance policies for the business income they lost as a result of COVID-19 and the resulting Executive Orders.

24.     Insurers, including Erie, have denied nearly every claim for lost business income—taking the outrageous position that its insureds have not suffered a "direct physical loss" to their property, which Erie claims is a prerequisite for coverage.

*Plaintiff's All-Risk Insurance Policy*

25.     In 2019, Erie sold Plaintiff an insurance policy (Erie Policy Number Q97 1258707) that included coverages for the "Income Protection" and "Extra Expense Coverage" (the "Policy").[1]

26.     At all times relevant hereto, Plaintiff was a named insured under the Policy.

27.     At all times mentioned herein, the Policy covered the restaurants/premises identified in paragraph 9, above. *Id.* at 3.

28.     Plaintiff fully complied with the terms of the Policy and have performed all of their obligations under the Policy, including but not limited to the payment of premiums and the timely reporting of claims. Therefore, the Policy has been in effect since its inception without interruption.

29.     Pursuant to the Policy, Erie agreed to pay for the loss of income sustained by Plaintiff "due to partial or total interruption of business resulting directly from loss or damage to property."

30.     Section XI of the Policy defines "Loss" to include "direct and accidental loss of or damage to covered property."

31.     The Policy defined "interruption of business" to mean the "period of time that your business is partially or totally suspended at it: (1) Begins with the date of direct "loss" to covered

---

[1] Plaintiff requested a copy of the Policy from Erie, but Erie has yet to provide the Policy, instead only providing Plaintiff with a denial letter.

property caused by a peril insured against; and (2) Ends of the date when the covered property should be repaired, rebuilt, or replaced with reasonable speed and similar quality."

32.     The Insurance Services Office ("ISO"), the leading insurance advisory organization, provides policy-writing services for the insurance industry including standard policy forms.

33.     In 2006, in response to the SARS epidemic and avian flu, ISO created a new "amendatory endorsement" to exclude loss due to virus or bacteria from coverage afforded by insurance policies like the Policy.

34.     The ISO amendatory endorsement states that there is "no coverage for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" (the "Virus Exclusion").

35.     Although most standard business income insurance (also known as business interruption insurance) policies include the Virus Exclusion, Erie Insurance policies–including the Policy at issue here–do not contain the Virus Exclusion or similar exclusion for virus or bacteria.

36.     On or about March 16, 2020, and in compliance with Executive Orders 2020-07 and 2020-10, Plaintiff suspended all dine-in operations at their restaurants and began suffering an ongoing loss of business income.

37.     On or about April 14, 2020, Plaintiff filed a claim with Erie related to their lost business income.

38.     On or about April 16, 2020, Erie denied coverage for the lost income Plaintiff has suffered because of COVID-19 and Executive Orders 2020-07 and 2020-10.

**Class Allegations**

39.     Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and 23(b)(3), Plaintiff

brings this action on behalf of themselves and the following Class:

> All Illinois businesses offering food or beverages for on-premises
> consumption that: (1) are covered under Erie Insurance insurance policies
> containing "Income Protection" coverage; (2) have made a claim for lost
> business income as a result of COVID-19 and Executive Orders 2020-07
> and 2020-10; and (3) been denied coverage.

40.     The Class is so numerous that joinder of all members is impracticable. Due to the

nature of the trade and commerce involved, the members of the Class are geographically dispersed

throughout the State of Illinois. While only Erie Insurance knows the exact number of Class

members, Plaintiff believes there are hundreds and likely thousands of members in the Class.

41.     Plaintiff's claims are typical of the claims of the other members of the Class they

seek to represent because Plaintiff and all Class members purchased identical coverage from Erie

Insurance containing identical language regarding lost business income.

42.     Plaintiff will fully and adequately protect the interests of all members of the Class.

Plaintiff has retained counsel experienced in complex class action and insurance litigation. Plaintiff

has no interests which are adverse to or in conflict with other members of the Class.

43.     The questions of law and fact common to the members of the Class predominate

over any questions that may affect only individual members.

44.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy since joinder of all Class members is impracticable. The

prosecution of separate actions by individual members of the Class would impose heavy burdens

upon the courts and would create a risk of inconsistent or varying adjudications of the questions

of law and fact common to the Class. A class action, on the other hand, would achieve substantial

economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

45.     The interest of the members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the Class are uniform and/or formulaic, and the expense and burden of individual litigation might make it virtually impossible for them to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

**<u>COUNT I – Breach of Contract ("Business Income")</u>**

46.     Plaintiff repeats and reallege the allegations of paragraphs 1 through 45 as if fully set forth herein.

47.     Plaintiff brings this count on behalf of the Class.

48.     By purchasing the Policy, Plaintiff entered into a contract with Erie Insurance.

49.     Erie Insurance promised to provide Plaintiff coverage for lost income as described above.

50.     COVID-19 rendered the covered property at the premises identified in paragraph 9, above, unsafe and inaccessible for dine-in customers.

51.     As a result of COVID-19 and Executive Orders 2020-07 and 2020-10, Plaintiff suffered a "Loss" as defined by the Policy.

52.     On or about April 14, 2020, Plaintiff made a claim for coverage pursuant to the terms and conditions of the Policy.

53.     On April 16, 2020, Erie Insurance denied Plaintiff's claim for Coverage.

54.     By denying Plaintiff's claim, Erie Insurance breached its contract with Plaintiff.

55.     As a result of Erie Insurance denying Plaintiff's claim, Plaintiff has been prevented from recovering lost business income pursuant to the terms and conditions of the Policy, thereby suffering damages.

## COUNT II – Declaratory Judgment

56.     Plaintiff repeats and reallege the allegations of paragraphs 1 through 55 as if fully set forth herein.

57.     Plaintiff brings this count on behalf of the Class and pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*

58.     Because Erie Insurance has denied Plaintiff's claim for lost business income under the Policy, there is an actual controversy between the parties.

59.     Plaintiff seeks a declaration by this Court that Plaintiff sustained a "Loss" as defined by the Policy because of COVID-19 and Executive Orders 2020-07 and 2020-10.

60.     Plaintiff seeks an additional declaration that the lost business income they sustained (and continue to sustain) is covered under the Policy, namely that the lost business income is a partial or total interruption of business resulting directly from loss or damage to property.

61.     A declaratory judgment regarding Erie Insurance's obligation to reimburse Plaintiff for the business income they lost as a result of COVID-19 and Executive Orders 2020-07 and 2020-10 will terminate the controversy and clarify the respective rights and obligations of the parties under Policy.

## Request for Relief

WHEREFORE, Plaintiff demands the following relief on behalf of themselves and all others similarly situated:

A.   That an Order be entered certifying this action as a Plaintiff Class action under Federal Rule of Civil Procedure 23;

B.   A declaration by this Court that Plaintiff sustained a "loss" as defined by the Policy because of COVID-19 and Executive Orders 2020-07 and 2020-10;

C.   A declaration by this Court that the lost business income Plaintiff sustained (and continue to sustain) is covered under the Policy, namely that the lost business income is a partial or total interruption of business resulting directly from loss or damage to property;

D.   A declaration that the business income Plaintiff lost as a result of COVID-19 and Executive Orders 2020-07 and 2020-10 is a covered loss under Policy Number BP17022546-2;

E.   Compensatory damages in such amount as demonstrated by the proofs at trial and that the Court deems just and proper;

F.   Punitive damages as to Counts for which such damages are available under applicable law and in an amount that the Court deems just and proper;

G.   Imposition of a constructive trust, an order granting recessionary and injunctive relief and other such equitable relief that the Court deems just and proper;

H.   An appropriate claims resolution facility, funded by Defendant, to administer relief to the Class in this case;

I.   Costs of litigation and attorneys' fees; and

J.   All other appropriate relief.

Dated:  April 19, 2020

Respectfully submitted,

**DUNCAN LAW GROUP, LLC,**

By:  /s/ Robert R. Duncan
Attorney for Plaintiff

Robert R. Duncan (Illinois Bar #6277407)
James H. Podolny (Illinois Bar #66321307)
**DUNCAN LAW GROUP, LLC**
161 North Clark Street, Suite 2550
Chicago, Illinois 60601
Phone: (312) 202-3283
Fax: (312) 202-3284
rrd@duncanlawgroup.com
jp@duncanlawgroup.com

**ESBROOK LAW, LLC,**

By:  /s/ Christopher Esbrook
Attorney for Plaintiff

Christopher J. Esbrook (Illinois Bar #6282829)
Michael Kozlowski (Illinois Bar #6320950)
**ESBROOK LAW, LLC**
77 W. Wacker Dr. Suite 4500
Chicago, Illinois 60601
Phone: (312) 319-7680
christopher.esbrook@ebsrooklaw.com
michael.kozlowski@esbrooklaw.com